UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ARTURO CARAVANTES and
FRANCISCO SOTARRIBA,

                  Plaintiffs,                          09 Civ. 7821 (RPP)

          - against -                       **OPINION AND ORDER**

53RD STREET PARTNERS, LLC d/b/a REMI
RESTAURANT, and OSCAR VELANDIA,

                  Defendants.
-----------------------------------------------------------X
**ROBERT P. PATTERSON, JR., U.S.D.J.**

## I.     Introduction

On September 10, 2009, Plaintiffs Arturo Caravantes ("Caravantes") and Francisco

Sotarriba ("Sotarriba") (collectively, "Plaintiffs") filed a Complaint ("Complaint") against

Defendants 53rd Street Partners, LLC d/b/a Remi Restaurant ("Remi"), and Oscar Velandia

("Velandia") (collectively, "Defendants").[1]  Therein, Plaintiffs allege that Defendants

discriminated against them in the terms and conditions of their employment on the basis of their

sex, subjected them to a severe and pervasive hostile work environment, and failed to provide a

reasonable mechanism for Plaintiffs to complain of the sexual harassment, thereby violating Title

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), New

York Human Rights Law, N.Y. Executive Law § 290, et seq. ("NYHRL") and New York City

Human Rights Law, Administrative Code of the City of New York § 8-101, et seq.

---

[1] A third Plaintiff, Moises Pastor ("Pastor"), was also listed as a party in the Complaint.  However, on September 12, 2011, the Court received a letter from Plaintiffs' counsel notifying it that an agreement had been reached to settle Pastor's claims.  On September 23, 2011, the Court signed a stipulation of dismissal with prejudice with respect to Pastor's claims.  (Stipulation of Dismissal with Prejudice dated September 15, 2011, ECF No. 65.)  As a result, Pastor is no longer a party to the case, and his name has been removed from the caption.  The stipulation does not affect the claims of Caravantes or Sotarriba.

("NYCHRL").  (Compl. dated October 9, 2009 ("Fed. Compl.") ¶¶ 74-91.)  In addition, the

Complaint alleges a common law claim for intentional infliction of emotional distress.  (Id. ¶¶

92-96.)

On May 26, 2011, Defendants filed a motion for summary judgment.  On June 17, 2011,

Plaintiffs submitted a memorandum in opposition to Defendants' motion, and on June 30, 2011,

Defendants submitted a reply memorandum.  Oral argument was held on July 1, 2011.  For the

following reasons, Defendants' motion for summary judgment is granted with respect to

Plaintiffs' claim for intentional infliction of emotional distress, and denied in all other respects.

## II.     Background

### A.     Parties

Remi Restaurant is an Italian restaurant located at 145 West 53rd Street in New York

City.  Defendant 53rd Street Partners purchased Remi, and began operating the restaurant on

April 11, 2005.  (Pls.' Resp. to Defs.' Local Rule 56.1 Statement ("Pls.' 56.1 Resp.") ¶¶ 1-2.)

Defendant Oscar Velandia is an employee at Remi who has been employed from 1997

through the present.  (Id. ¶ 6.)  Velandia started as a busboy, was promoted to waiter in 1997, and

became head waiter at Remi in 2005.  (Id.)  Plaintiffs allege, though Defendants do not concede,

that when Velandia became a head waiter in 2005, he was also given responsibilities reflecting

those of an assistant manager.[2]  (Id.)

---

[2] In support of this contention, Plaintiffs cite to the deposition of Remi employee Jose Ortiz, who stated that he
learned in a staff meeting held sometime around September or October of 2005 by Francisco Pistorio, then general
manager of Remi, that Velandia was assigned the position of assistant manager.  (Decl. of Aaron S. Delaney dated
June 17, 2011 ("Delaney Decl. 6/17/11") Ex. 4 at 39-41.)  Further, restaurant employee Ivan Reyes stated in his
deposition that when he applied for the position of busboy at Remi, he interviewed with Pistorio with translation
provided by Velandia, whom Pistorio described as assistant manager.   (Delaney Decl. 6/17/11 Ex. 8 at 13-14.)

Plaintiff Caravantes is a male who was employed at Remi as a coffee station operator from approximately July 1991 until August 11, 2008.[3]  (Id. ¶ 3.)  Plaintiff Sotarriba is a male who was employed at Remi from approximately 1999 to May 31, 2008, first as a busboy, and then as a food runner.[4]  (Id. ¶ 4.)

### B.   Administrative Action

#### 1.   Caravantes's NYSDHR Complaints

On March 10, 2008 Caravantes filed a verified complaint pro se with the New York State Division of Human Rights ("NYSDHR") ("Initial NYSDHR Complaint"), charging 53rd Street Partners and Ben Ranieri ("Ranieri") with "an unlawful discriminatory practice relating to employment because of age, opposed discrimination/retaliation, [and] sex."[5]  (Decl. of Aaron S. Delaney dated June 17, 2011 ("Delaney Decl. 6/17/11") Ex. 12.)  In the Initial NYSDHR Complaint, Caravantes alleged that, on or about October 11, 2007, Ranieri,[6] who was employed by Remi as a waiter, inappropriately touched his penis.  (Delaney Decl. 6/17/11 Ex. 12 ¶ 5.)  Caravantes alleged that the Defendants took no action in response to this incident, despite the fact that he complained to Remi's general manager Francisco Pistorio ("Pistorio") about the incident, and told Pistorio that Ranieri had sexually harassed other employees in the past.  (Id.)  Caravantes also alleged generalized discrimination against him in retaliation for opposing discriminatory practices.  (Id. ¶¶ 2-8.)  Though Velandia is mentioned in the Initial NYSDHR Complaint, (id. ¶ 3), Caravantes levied no allegation of sexual harassment against him because

---

[3] There is a dispute as to whether Caravantes's employment ended on August 8 or August 11, 2008.  (See Pls.' 56.1 Resp. ¶ 3.)  Since all facts and inferences therefrom are to be drawn in favor of the nonmoving party in a motion for summary judgment, Harlen Assocs. v. Vill. of Mineola, 273 F.3d 494, 498-99 (2d Cir. 2011), the Court will assume that Caravantes's employment ended on August 11, 2008, as Plaintiffs contend.

[4] By his own account, Sotarriba's duties as a runner were "[t]o bring the food, to have some cheeses, the shakers full and have the dishes in place for the chefs and whatever sauces they may need."  (Decl. of Kerry M. Parker in Supp. of Defs.' Mot. for Summ. J. dated May 26, 2011 Ex. D at 20).

[5] This complaint was allegedly cross-filed with the EEOC.  (Fed. Compl. ¶ 5.)

[6] In the body of the Initial NYSDHR Complaint, Mr. Ranieri's last name is mistakenly spelled "Ranier."

Caravates "was afraid that if I complained about his harassment, Velandia would have me fired or have my shifts or work hours decreased."  (Aff. of Arturo Caravantes in Supp. of Pls.' Mem. in Opp'n to Defs.' Mot. for Summ. J. ("Caravantes Aff.") ¶ 13.)

Plaintiffs contend that, in an August 7, 2008 interview with NYSDHR social worker Maria Torres, Caravantes revealed that Velandia had been sexually harassing him and had coerced Caravantes to have oral sex and sex with him.  (Caravantes Aff. ¶ 20; <u>see</u> Delaney Decl. 6/17/11 Ex. 13.)

On August 11, 2008, after working at Remi for seventeen years, Caravantes's employment ended.  (Pls.' 56.1 Resp. ¶ 9.)  Plaintiffs contend that Caravantes was fired because Velandia made disparaging comments about him after he resisted Velandia's sexual harassment. (<u>Id.</u>; Caravantes Aff. ¶ 22.)  Defendants maintain that Caravantes's position as a coffee station operator was eliminated, and that he declined offers to work either as a food runner or a restaurant cleaner.  (Defs.' Local Rule 56.1 Statement ("Defs.' 56.1") ¶ 9.)

In or around December 2008, Caravantes retained counsel.  (Caravantes Aff. ¶ 23.) Plaintiffs assert that in January 2009, the NYSDHR contacted Caravantes's counsel requesting that Caravantes amend the Initial NYSDHR Complaint to add allegations concerning Velandia's conduct.  (Pls.' 56.1 Resp. ¶ 11.)  On January 15, 2009, Caravantes filed an amended charge with the EEOC alleging discrimination on the basis of sex by Velandia.  (Delaney Decl. 6/17/11 Ex. 14.)  The charge, which is dated January 15, 2009 and notarized, states the following:

> Beginning in 2006, Oscar Velandia, a senior manager at Remi Restaurant, sexually harassed me by making gross sexual comments, inappropriately touching my genitals, and making me perform sexual acts on at least a once weekly basis. The last time Velandia propositioned and/or touched me was in June or July 2008. In March 2008, I told Oscar that I did not want him to ever touch me again.  From then on, Velandia began to retaliate against me.  Eventually, on August 11, 2008, Oscar caused me to be fired by the restaurant in retaliation for my refusal to engage in sex acts with him.

4

(Id.)[7]

On June 2, 2009, Caravantes's attorneys submitted an amended verified complaint ("Amended NYSDHR Complaint") to the NYSDHR which was filed with the NYSDHR on June 4, 2009.[8]  (Pls.' 56.1 Resp. ¶ 10.)  The Amended NYSDHR Complaint charges 53rd Street Partners, Ranieri, and Velandia with unlawful discriminatory practices relating to employment on the basis of sex and unlawful retaliation.  (Delaney Decl. 6/17/11 Ex. 16.)  Specifically, it alleges that Velandia "commenced a campaign of sexual harassment" against Caravantes beginning in late 2005, (id. ¶ 4), and running up until approximately July 2008 (id. ¶ 11).  Velandia's harassment began with "sexual touching," and escalated to "grabbing Mr. Caravantes's genitals on an almost daily basis and eventually forcing Mr. Caravantes into oral intercourse."  (Id. ¶¶ 4-5.)  It concludes: "On August 11, 2008, Mr. Caravantes was fired from Remi because of his complaint to NYSDHR and because he opposed Mr. Velandia's continuing sexual harassment."  (Id. ¶ 12.)  In addition to the foregoing, the Amended NYSDHR Complaint alleges that "the date the most recent or continuing discrimination took place is August 11, 2008."  (Id.)  On June 12, 2009, the EEOC issued Caravantes a Notice of Right to Sue on the charges in the Amended NYSDHR Complaint.  (Delaney Decl. 6/17/11 Ex. 17.)

### 2.  Sotarriba's EEOC Charge

---

[7] Defendants argue that Plaintiffs have not provided competent proof of the filing: "Plaintiffs have submitted nothing more than a document dated January 15, 2009 allegedly signed by Caravantes with no file stamp, proof of filing, or docket or case number."  (Defs.'s Am. Reply Mem. in Supp. Defs.'s Mot. Summ. J. ("Defs.'s Am. Reply") at 6.)  In support of this contention, Defendants offer the declaration of Reid Rosen, the attorney who represented 53rd Street Partners in defense of the charge of discrimination filed by Caravantes in March 2008.  (See Decl. of Reid A. Rosen dated June 27, 2011 ("Rosen Decl.").)  In his declaration, Mr. Rosen states that neither he nor 53rd Street Partners ever received any documentation from the EEOC regarding this alleged charge.  (Id. ¶ 4.)  Based on this information, Defendants assert that they were not placed on adequate notice of the discrimination claims made in the alleged January 15, 2009 EEOC charge.  (Id.)

[8] This complaint was allegedly cross-filed with the EEOC.  (Fed. Compl. ¶ 5.)

At the end of May 2008, Sotarriba asked Pistorio if he could take two or more months of vacation to visit his family in Mexico.  (Pls.' 56.1 Resp. ¶ 16.)  Pistorio told him that he could only allow him a month of vacation.  (Id.)  Sotarriba continued to work at Remi until May 31, 2008.  (Id. ¶ 16.)  Thereafter, he went to Mexico and did not return to Remi until September 2008.  (Id. ¶ 17.)  Following his return, Sotarriba spoke with general manager Carlos Maggi, who informed him that his services were not needed at that time.  (Id.)  Sotarriba has not returned to work at Remi since.  (See id. ¶ 4.)

On January 20, 2009,[9] Sotarriba filed a charge of employment discrimination with the EEOC alleging that Defendant 53rd Street Partners discriminated against him on the basis of sex. (Delaney Decl. 6/17/11 Ex. 15.)  Therein, Sotarriba alleges that, "[b]eginning in 2001, Oscar Velandia . . . sexually harassed me by making gross sexual comments, inappropriately touching my genitals, and asking me to engage in sexual acts with him."  (Id.)  For example, "[a]t least 10-20 times per day, Velandia would say to me, 'Let me suck you.'"  (Id.)  Further, Sotarriba alleges that because he would not engage in sexual acts with Velandia, Velandia threatened to "make [his] life impossible," and looked for an excuse to fire him.  (Id.)  According to the charge, the last time Velandia touched or propositioned Sotarriba was in June 2008.[10]  (Id.)

Defendants were not served with Sotarriba's EEOC charge until July 30, 2009, when they received a letter from John B. Douglass, Supervisor of the EEOC Charge Receipt/Technical Information Unit.  (Id.)  The letter stated that Sotarriba's charge was received by the EEOC in January 2009 and was considered timely, "but due to an error on [the EEOC's part], was not processed and served according to [their] usual procedures."  (Id.)  On August 7, 2009, the

---

[9] Sotarriba signed the EEOC charge on January 20, 2009, and thus it could not have been submitted before this date. (See Delaney Decl. 6/17/11 Ex. 15.)  Drawing all inferences in favor of the non-moving party at this stage, the Court will assume that January 20, 2009 was the date that Sotarriba filed the charge.
[10] The Court notes that Sotarriba's last day of employment at Remi was May 31, 2008.

EEOC issued Sotarriba a Notice of Right to Sue on his January 20, 2009 charge.  (Delaney Decl. 6/17/11 Ex. 18.)

    **C.**     **The Federal Complaint**

    On September 10, 2009, Plaintiffs filed a Complaint in this Court, asserting six causes of action.  The first cause of action charges 53rd Street Partners with discriminating against Plaintiffs in the terms and conditions of their employment on the basis of their sex, subjecting them to a severe and pervasive hostile work environment, and failing to provide a reasonable mechanism for Plaintiffs to complain of the sexual harassment in violation of Title VII.  (Fed Compl. ¶¶ 74-77.)  The second and third causes of action charge 53rd Street Partners with violating the NYSHRL and the NYCHRL, respectively, for engaging in the same conduct.  (Id. ¶¶ 78-87).  The fourth and fifth causes of action charge Velandia with aiding and abetting in the illegal acts of 53rd Street Partners in violation of the NYSHRL and the NYCHRL, respectively. (Id. ¶¶ 88-91.)  The sixth and final cause of action asserts a common law claim against 53rd Street Partners and Velandia for intentional infliction of emotional distress.  (Id. ¶¶ 92-96).

    Plaintiffs allege that, in 2005, Velandia commenced a pattern of sexual harassment against Caravantes, which began with suggestive comments and touching and culminated in demands for sex.  (Id. ¶¶ 21-25.)  Though Caravantes asked Velandia to stop, the harassment persisted.  (Id. ¶ 22.)  In approximately April of 2006, Velandia began to demand that Caravantes allow Velandia to perform oral sex on him.  (Id. ¶ 25.)  Caravantes resisted at first, but eventually submitted to Velandia, believing that he would lose his job if he did not.  (Id. ¶¶ 25, 28.) Velandia continued to create and maintain a hostile work environment by verbally harassing Caravantes until approximately July 2008.  (Id. ¶ 32.)  On approximately August 11, 2008, Caravantes was fired by Remi.  (Id. ¶ 34.)

The Complaint also alleges that, in or about 2001, Velandia began sexually harassing Sotarriba, by "bumping up against or brushing [him]." (Id. ¶ 61.) After several months, Velandia began sneaking up on Sotarriba and grabbing his genitals. (Id. ¶ 62.) This would occur between three and five times a day. (Id.) In April 2005, when 53rd Street Partners purchased Remi, the frequency with which Velandia would grab Sotarriba's genitals escalated to approximately ten to fifteen times a day. (Id.) This verbal and physical sexual harassment continued until late 2007. (Id. ¶ 65.)

Lastly, Plaintiffs allege that 53rd Street Partners failed to take any steps to prevent and remedy this harassment, that they "did not have a procedure or policy in place for raising and addressing complaints of sex discrimination or sexual harassment," and that they "knew or should've known about Velandia's sexual harassment of the Plaintiffs." (Id. ¶¶ 72-73.)

### III.    Legal Standard

Defendants seek summary judgment with respect to the first and sixth causes of action, and seek dismissal of the remaining causes of action for lack of subject matter jurisdiction. The Court shall grant summary judgment if the movant shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In the context of this motion for summary judgment, all fact and inferences therefrom are to be construed in favor of the party opposing the motion. Harlen Assocs. v. Vill. of Mineola, 273 F.3d 494, 498-99 (2d Cir. 2011).

### IV.    Discussion

#### A.    Title VII Claims

Defendants assert that Caravantes and Sotarriba failed to timely file their Title VII claims of sexual harassment with the EEOC, and as a result, that the claims are time-barred and must be

dismissed.  (Defs.' Mem. in Supp. of Mot. for Summ. J. ("Defs.' Mem.") at 3, 12.)  Title VII

requires an aggrieved employee to file a charge of discrimination with the EEOC within 300

days of the alleged discriminatory action.  42 U.S.C. § 2000e-5(e)(1); Petrosino v. Bell Atlantic,

385 F.3d 210, 219-20 (2d Cir. 2004).  The purpose of this administrative filing requirement is to

provide prompt notice to the employer, thereby encouraging conciliation whenever possible.

Drummer v. DCI Contracting Corp., 772 F. Supp. 821, 825 (S.D.N.Y. 1991).  "The filing of an

EEOC charge allows the EEOC to investigate, mediate, and take remedial action."  Cameron v.

St. Francis Hosp., 56 F. Supp. 2d 235, 239 (D. Conn. 1999) (citing Porter v. Texaco, Inc., 985 F.

Supp. 380, 383 (S.D.N.Y. 1997)).  A plaintiff who fails to timely file an EEOC charge is barred

from bringing that claim in court.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109-10

(2002).

     "Fairness, and not excessive technicality, must guide the consideration of [T]itle VII

actions."  Adames v. Mitsubishi Bank Ltd., 751 F. Supp. 1565, 1570 (E.D.N.Y. 1990) (citing

Love v. Pullman Co., 404 U.S. 522, 526-27 (1972)).  As such, the Supreme Court has established

that Title VII filing requirements are not jurisdictional prerequisites, and may be waived or tolled

"when equity so requires."  Morgan, 536 U. S. at 121 (citing Zipes v. Trans World Airlines, Inc.,

455 U.S. 386, 398 (1982)).  "These equitable doctrines allow us to honor Title VII's remedial

purpose 'without negating the particular purpose of the filing requirements, to give prompt notice

to the employer.'"  Id. (quoting Zipes, 455 U.S. at 398.)

### 1. *Caravantes's Title VII Claim*

     Caravantes's Amended NYSDHR Complaint was filed with the EEOC on June 4, 2009.

Therefore, Defendants argue that any discriminatory acts that took place prior to August 8, 2008

(300 days before the filing of the Amended NYSDHR Complaint) are time-barred.  The only

alleged action that took place within the 300-day time period was the termination of Caravantes's

employment, which occurred on August 11, 2008.

a.    The Relation Back Doctrine

Plaintiffs argue that Caravantes's June 2009 Amended NYSDHR Complaint was timely

filed nevertheless, because it relates back to his Initial NYSDHR Complaint, which was filed in

March 2008.  Under 29 C.F.R. § 1601.12(b):

> A charge may be amended to . . . clarify and amplify allegations made therein.
> Such amendments and amendments alleging additional acts which constitute
> unlawful employment practices related to or growing out of the subject matter of
> the original charge will relate back to the date the charge was first received.

Courts have cautioned against a "technical reading of title VII requirements," finding it

"particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers,

initiate the process." Adames, 751 F. Supp. at 1572 (quoting Zipes, 455 U.S. at 397).

It is undisputed that Caravantes's March 2008 Initial NYSDHR Complaint was timely

filed, as it alleges sexual harassment occurring in October 2007, well within the 300-day

statutory period which extends back to May 15, 2007.  (See Delaney Decl. 6/17/11 Ex. 12 ¶ 5.)

Plaintiffs contend that Caravantes's Amended NYSDHR Complaint relates back to this original

filing because it alleges "additional acts which constitute unlawful employment practices *related

to or growing out of* the subject matter in the original charge."  (Pls.' Mem. in Opp'n to Defs.'

Mot. for Summ. J. ("Pls.' Mem.") at 7 (citing 29 C.F.R. § 1601.12(b)) (emphasis added).)  They

emphasize the fact that Caravantes's Initial NYSDHR Complaint included allegations of sexual

harassment against Ranieri, and that his Amended NYSDHR Complaint includes precisely the

same type of unlawful employment practice by Velandia – specifically that a male employee

touched him and other employees inappropriately and that his complaints about these issues were

ignored by Remi's management.  (Id. at 8.)  As such, both complaints allege "same-sex sexual

10

harassment by another employee at Remi through physical acts." (Transcript of July 1, 2011 Oral Argument at 23.) In response, Defendants argue that the Amended NYSDHR Complaint does not relate back, as it "include[s] entirely new and completely unrelated allegations . . . ." (Defs.' Am. Reply at 2.)

"[T]he majority of courts have allowed plaintiffs considerable latitude in fleshing out the factual circumstances surrounding their initial complaint." Adames, 751 F. Supp. at 1565 (holding that amendment that added class action allegations and discrimination on the bases of race and ethnic origin related back to original EEOC charge that alleged discrimination due to sex and national origin as to plaintiff alone.) In Miranda v. Empresas Diaz Masso, Inc., 699 F. Supp. 2d 413 (D.P.R. 2010), vacated on other grounds sub nom. Hernandez-Miranda v. Empresas Diaz Masso, Inc., 651 F.3d 167 (1st Cir. 2011), plaintiff filed an EEOC charge alleging that she had suffered a hostile work environment, specifically addressing incidences of sexual harassment by one employee. Plaintiff later amended her charge to included allegations of sexual harassment against two other employees who had not been mentioned in the earlier charge. The court found that,

> [m]uch like the original EEOC charge, the amended allegations involve harassment against plaintiff perpetrated by [] employees motivated by sexual discriminatory animus. Given the similarity of the discrimination claims in both the original charge and the amendment, the new allegations can be fairly said to grow out of those initially described by the plaintiff . . . .

Id. at 423. Thus, the court held that the amended charge related back to the initial charge, and that the allegations contained therein were not time-barred.

While it is true that, "[g]enerally, amendments that raise a new legal theory do not 'relate back' to an original charge of discrimination," Manning v. Chevron Chemical Co., 332 F.3d 874, 878 (5th Cir. 2003), Caravantes's Amended NYSDHR Complaint relies on the *same* theory as

his Initial NYSDHR Complaint: sex discrimination.  In this way, the factual scenario presented in Caravantes's case is closer to the facts of <u>Miranda</u>, 699 F. Supp. 2d. 413 (amended EEOC charge containing allegations of sexual harassment against two employees related back to original charge alleging sexual harassment by a different employee), than it is to the facts of <u>Manning</u>, 332 F.3d 874 (amended EEOC charge alleging discrimination based on disability did not relate back to original charge alleging discrimination based on race and gender) or <u>Drummer</u>, 722 F. Supp. 821 (amended EEOC charge alleging religious discrimination did not relate back to original charge alleging gender discrimination).

Courts will also look to the amount of prejudice a defendant would suffer in determining whether the relation back doctrine applies.  <u>See</u> <u>Adames</u>, 751 F. Supp. at 1573.  "One of the central purposes of the employment discrimination charge is to put employers on notice of 'the existence and nature of the charges against them.'"  <u>Id.</u> (quoting <u>EEOC v. Shell Oil Co.</u>, 466 U.S. 54, 77 (1984)).  Defendants allege that Caravantes's Initial NYSDHR Complaint could not have put them on notice of the alleged sexual harassment perpetrated by Velandia, as it did not implicate him in any wrongdoing.  Furthermore, they argue that even if they were on notice of sexual conduct among male employees at the restaurant, this conduct does not constitute sexual harassment unless it is unwelcome.  (Defs.' Am. Reply at 4.)  This argument is unavailing.  Here, Caravantes's Initial NYSDHR Complaint alleged that Ranieri "touched him on the penis," that "Ranier[i] has in the past sexually harassed other employees," and that when Caravantes complained to Pistorio about this harassment, no action was taken.  (Delaney Decl. 6/17/11 Ex. 12 ¶ 5.)  This allegation was sufficient to put Defendants on notice that a pattern of sexual harassment was occurring within their restaurant, and that the management of the restaurant was doing nothing to combat it.  Remi's failure to investigate or address the issue in any way despite

the notice it was given of serious misconduct by members of its wait staff indicates that it will

not be prejudiced by allowing relation back, as it made no effort to engage in the sort of

independent conciliation contemplated by the statutory scheme.  See Drummer, 772 F. Supp. at

825.[11]

Having determined that Caravantes's June 2009 Amended NYSDHR Complaint relates

back to his March 2008 Initial NYSDHR Complaint, the Court finds it unnecessary to determine

the validity of the January 2009 Complaint.

>    b.    *The Continuing Violation Doctrine*

Defendants contend that, even if Caravantes's June 2009 Amended NYSDHR Complaint

is found to relate back to his March 2008 Initial NYSDHR Complaint, all claims that are

predicated on events occurring before May 15, 2007 (300 days prior to the filing of the March

2008 Initial NYSDHR Complaint) should be dismissed as time-barred.  (Defs.' Mem. at 11.)

Under the continuing violation doctrine, a plaintiff may pursue a claim of hostile work

environment if he or she can demonstrate that each asserted act by a defendant is part of a pattern

and at least one of those acts contributing to the claim occurred within the statutory limitations

period.  Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 220 (2d Cir. 2004).  In Morgan, the

Supreme Court was faced with the questions: (1) what constitutes an "unlawful employment

practice"? and (2) when has that practice occurred?  536 U.S. at 110.  The Court concluded that

the answer to these questions varies with respect to allegations involving discrete discriminatory

---

[11] Defendants cite to language in Cameron stating that "[i]n the Second Circuit, the clear rule is that '[a] district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge.'" 56 F. Supp. 2d at 239 (quoting Wilson v. Fairchild Republic Co., 143 F.3d 733, 739 (2d Cir. 1998) (quoting Butts v. City of New York Dept. of Hous. Preservation & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993))).  However, this reliance on Cameron is misplaced; the language cited by Plaintiffs is in reference to the relationship between a judicial complaint and an EEOC charge in a Title VII action, and not the "relation back" doctrine, which deals with the relationship between an initial and an amended EEOC charge.  Defendants' reliance on Duncan v. Manager, 397 F.3d 1300 (10th Cir. 2005) in this regard is similarly misplaced, as that case dealt with the "continuing violation" doctrine.

acts, and those involving a hostile work environment.  Id.  With respect to the first category, the

Court found that a "discrete retaliatory or discriminatory act 'occurred' on the day that it

'happened.'"  Id.  Therefore, "a Title VII plaintiff raising claims of discrete discriminatory or

retaliatory acts must file his charge within [300 days]" of the discrete act.  Id. at 122.

Furthermore, "discrete acts that fall within the statutory time period do not make timely acts that

fall outside the time period."  Id.at 112.

> However, the Court determined that hostile work environment claims "are different in
>
> kind from discrete acts."  Id. at 115.

> A hostile work environment claim is composed of a series of separate acts that
> collectively constitute one 'unlawful employment practice' . . . .  Provided that an
> act contributing to the claim occurs within the filing period, the entire time period
> of the hostile environment may be considered by a court for the purposes of
> determining liability.

Id. at 117.  Thus, in hostile work environment cases, an "offensive incident within the limitations

period permits consideration of an incident preceding the limitations period . . . if the incidents

are sufficiently related."  McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 77 (2d Cir. 2010).

The Second Circuit has held that, under Morgan, the Court is required "to make an

individualized assessment of whether incidents and episodes are related."  Id.  "Consistent with a

flexible approach, courts may evaluate relatedness by comparing the severity of latter-day and

earlier incidents.  Obviously, the more similar the incidents are in severity, the more likely it is

that the incidents are related . . . ."  Id. at 78 n.5.

> Here, Caravantes has alleged a campaign of harassment by Velandia, which was initiated

prior to the statutory time period, and continued well into it.  The Amended NYSDHR

Complaint alleges that the sexual harassment by Velandia began with sexual touching in late

2005, escalated to genital groping and oral intercourse in early 2006, and continued until July

14

2008.  (Delaney Decl. 6/17/11 Ex. 16 ¶¶ 4-5.)  Given that the genital groping and oral intercourse began prior to the statutory time period and persisted, Caravantes's allegations constitute a continuing violation, which can be considered in its entirety for the purposes of this lawsuit.

### 2.  *Sotarriba's Title VII Claim*

Sotarriba filed his charge with the EEOC on January 20, 2009.  Therefore, Defendants argue that any discriminatory acts that took place prior to March 26, 2008 (300 days before the filing of the charge) are time-barred.  (See Defs.' Mem. at 12.)  The parties concede that any discriminatory action taken by Velandia between March 26, 2008 and May 31, 2008 (Sotarriba's last day of employment) falls within the 300-day statutory period.  However, Defendants argue that Sotarriba's deposition testimony establishes that Velandia's alleged sexual harassment of him ceased in December 2007, and as a result, that his entire Title VII claim is time-barred. (Defs.' 56.1 ¶ 21; Defs.' Mem. at 12.)

However, Sotarriba's deposition testimony is not definitive on this point.  In fact, Sotarriba did not state that Velandia's sexual harassment ended in December 2007.  When questioned on the subject during the deposition, the following exchange between Defendants' counsel and Sotarriba took place:

> Q.    For how long did that last where you say that Oscar was touching you with his hand on your genital area 10 to 15 times per day?
>
> A.    That ended in like 2007.  Like December of 2007, he didn't touch me.  However, the sexual harassment stopped.  I mean, as far as him touching me.  However, the general harassment did continue until the day I left.
>
> Q.    Is it – Let me rephrase.  Are you saying that the last time Oscar touched your genital area was in December 2007?

[Plaintiffs' lawyer Desiree Cummings]: Objection, asked and answered.

> A.    Yes.  And that's when he began to make my life difficult up until the day I left.

(Parker Decl. 5/26/11 Ex. D at 71.)  The Court reads this testimony to indicate that, while

Velandia's *physical* harassment of Sotarriba ended in December 2007, Velandia continued to

harass Sotarriba until the day he stopped working at Remi.

### a.    The Continuing Violation Doctrine

As discussed <u>supra</u>, "under the continuing violation doctrine, a plaintiff may bring claims

for discriminatory acts that would have been barred by the statute of limitations as long as 'an act

contributing to that hostile environment [took] place within the statutory time period.'" <u>Papelino</u>

<u>v. Albany Coll. of Pharmacy of Union Univ.</u>, 633 F.3d 81, 91 (2d Cir. 2011) (quoting

<u>McGullam</u>, 609 F.3d at 75 (quoting <u>Morgan</u>, 536 U.S. at 105)).  In <u>Papelino</u>, the Second Circuit

found a continuing violation where the harassment before the limitations period included

numerous sexual advances made by a teacher towards a student, while harassment within the

limitations period consisted of the teacher accusing the student of cheating, "spearheading the

investigation of the cheating allegations," and an isolated incident in which the teacher leaned

over and exposed her breasts to the student during an Honor Code hearing.[12] <u>Id.</u> at 91.  In

reversing the district court's grant of summary judgment for defendants, the Second Circuit

determined that "[a] reasonable jury could find that [the teacher] engaged in this conduct because

[the student] rejected her sexual advances, and that these actions were part of a pattern of

pervasive conduct that was sufficiently hostile or abusive to alter the conditions of [the student's]

educational environment."  <u>Id.</u>

Defendants argue that <u>Papelino</u> is inapposite, as there was at least one act of sexual

harassment which took place within the limitations period (the teacher's exposure of her breasts).

---

[12] Defendants point out that <u>Papelino</u> "did not involve Title VII claims[ or] claims against an employer."  (Defs.' Am. Reply at 9.)  However, it is well settled in the Second Circuit that "a Title IX hostile education environment claim is governed by traditional Title VII 'hostile environment' jurisprudence."  <u>Papelino</u>, 633 F.3d at 89 (internal quotations omitted).

(See Defs.' Am. Reply at 9.)  However, it is clear that the Papelino court's decision did not rest

on these grounds, as it stated explicitly that even though much of the adverse treatment that took

place within the limitations period was not "overtly sexual in nature, in the circumstances here, a

reasonable jury could find that it was "on account of sex."  Papelino, 633 F.3d at 91.  (citing

Raniola v. Bratton, 243 F.3d 610, 621 (2d Cir. 2001) (both sex-specific and other adverse

treatment can be part of a hostile environment where the "other adverse treatment was also

suffered on account of sex")).  Furthermore, in Colapierto v. Dept. of Motor Vehicles, No.

3:08cv238 (WWE), 2010 WL 2596519 (D. Conn. June 24, 2010), the court denied defendants'

motion for summary judgment on a claim for hostile work environment where the pre-limitations

period harassment involved sexually-offensive acts, while the within-limitations period

harassment consisted mainly of video surveillance of the plaintiff.  Thus, despite the fact that no

act of explicit sexual harassment occurred during the 300 days prior to plaintiff filing her

complaint, the court found that, "[c]onstruing the evidence most favorably to the non-moving

party, there exists at least a question of fact as to whether a continuing sexually hostile

environment existed, whether [defendant's] conduct was based on plaintiff's sex, and whether it

was related to the prior incidents or contributed to the alleged hostile environment."  Id. at *4.

 As Plaintiffs point out in their brief, Defendants' reliance on Beattie v. Farnsworth

Middle Sch., 143 F. Supp. 2d 220 (N.D.N.Y. 1998), is misplaced, as the court in that case

employed the "Berry test" (first annunciated in Berry v. Bd. of Supervisors of Louisiana State

Univ., 715 F.2d 971 (5th Cir. 1983)) to analyze whether a continuing violation had occurred.

The Berry test, "which, among other things, takes into account . . . whether the earlier acts have

sufficient permanency to trigger the employee's awareness of and duty to challenge the alleged

violation,"  Morgan, 536 U.S. at 107 n.3, was never adopted by the Second Circuit, and was

called into question by the Supreme Court in Morgan.  Compare id. at 117-18 ("It is precisely

because the entire hostile work environment encompasses a single unlawful employment practice

that we do not hold, as have some of the Circuits, that the plaintiff may not base a suit on

individual acts that occurred outside the statute of limitations unless it would have been

unreasonable to expect the plaintiff to sue before the statute ran on such conduct."), with Beattie,

143 F. Supp. 2d at 227 (Relying on the fact that "the nature of the touching was of sufficient

severity to trigger the Plaintiff's awareness of her justification in asserting her employment

rights[, y]et she refrained from filing an EEOC complaint until approximately two years after

the alleged incidents.").[13]  Instead, "in determining whether an actionable hostile work

environment claim exists, we look to all the circumstances, including "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work

performance."  Morgan, 536 U.S. at 116 (internal quotations omitted).

In this case, Velandia is alleged to have subjected Sotarriba to a campaign of intense

verbal and physical sexual harassment beginning in late 2000.  When Sotarriba definitively

rejected these sexual advances in December 2007, Velandia responded by assigning Sotarriba

duties not included in his job description, making him work the closing shift, and complaining

about his performance to Pistorio.  (Aff. of Francisco Sotarriba in Supp. of Pls.' Mem in Opp. to

---

[13] Defendants reliance on Duncan v. Manager is similarly misplaced.  In Duncan, the Tenth Circuit stated that "Morgan holds that a series of alleged events comprises the same hostile work environment where 'the pre- and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.'"  397 F.3d at 1309 (quoting Morgan, 536 U.S. at 120).  However, a glance at the Morgan opinion itself demonstrates that the Supreme Court did not in fact make this holding.  Instead, it quoted the Ninth Circuit Court of Appeals as having held this in the proceeding below.  See Morgan, 536 U.S. at 120 ("With respect to Morgan's hostile environment claim, the Court of Appeals concluded that 'the pre- and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.'") (emphasis added)).  Given the Tenth Circuit's misreading of the Morgan case, Duncan has little persuasive value.  Furthermore, the factual scenario in Duncan, which involved allegations of discrimination over 18 years in numerous different departments of a police force, is readily distinguishable from the case at hand, which involved allegations of repeated sexual harassment taking place in a single restaurant.

Defs.' Mot. for Summ. J. ("Sotarriba Aff.") ¶¶ 7-11.)  At least some of this behavior took place after March 28, 2008.

Defendants' assertion that they were not placed on notice of this harassment is without merit.  In Sotarriba's EEOC charge, he states: "[b]ecause I would not engage in sexual acts with Velandia, he often threatened me – saying that he would 'screw me' and 'make my life impossible.'  Velandia was always looking for an excuse to fire me."  (Delaney Decl. 6/17/11 Ex. 15.)  As the Second Circuit found in Papelino, "[w]hile this adverse treatment was not overtly sexual in nature, in the circumstances here, a reasonable jury could find that it was on account of sex."  Papelino, 633 F.3d at 91 (citations omitted).  Thus, Plaintiffs have shown a continuing hostile work environment violation.

> **B.      Intentional Infliction of Emotional Distress**

Defendants assert that Plaintiffs failed to timely file their common law claim for intentional infliction of emotional distress and thus the claim must be dismissed.  (Defs.' Mem. at 22.)  New York has established a one-year statute of limitations for intentional torts, including intentional infliction of emotional distress.  See N.Y. C.P.L.R. § 215(3); Wait v. Beck's N. Am., Inc., 241 F. Supp. 2d 172, 180 (N.D.N.Y. 2003).  The Complaint in this case was filed on September 10, 2009, and thus the statutory limitations period extends back to September 10, 2008.  However, Caravantes's employment with Remi ended on August 11, 2008, and Sotarriba's employment ended on May 31, 2008.  Therefore, none of the allegations contained in the Federal Complaint took place within the statutory limitations period.

Plaintiffs argue that the statute of limitations should be tolled for the duration of the period that the Title VII claim was before the EEOC since the intentional infliction of emotional distress claims arise from the same facts as the Title VII claim.  (See Pls.' Mem. at 24.)  They

argue that, since the EEOC did not issue a Notice of Right to Sue until June 12, 2009, Plaintiffs'

claims, brought within a year of that date, are timely.  (Id.)  Defendants counter that "'[t]he vast

majority' of courts in the Second Circuit have held that the statute of limitations for state tort

claims is *not* tolled during the pendency of an administrative discrimination charge."  (Defs.'

Am. Reply at 15 (emphasis in original) (quoting Kolesnikow v. Hudson Valley Hosp. Center,

622 F. Supp. 2d 98, 122 (S.D.N.Y. 2009)).)

Indeed, the Second Circuit has not considered whether the filing of an administrative

charge with the EEOC or the NYSDHR tolls the statute of limitations as to all claims arising out

of such charge until the relevant termination proceedings are pending, and the district courts

within the Second Circuit are split on the question.  However, "[t]he weight of authority . . . is

against tolling state claims during the pendency of the EEOC claim."  Gardner v. St.

Bonaventure Univ., 171 F. Supp. 2d 118, 129 (W.D.N.Y. 2009) (collecting cases).  As the

Kolesnikow court explained:

> courts have followed the reasoning of Johnson v. Railway Express Agency, Inc.,
> 421 U.S. 454 (1975), in which the Supreme Court held that a plaintiff's time to
> file a discrimination claim under 42 U.S.C. § 1981, which is governed by the
> applicable state law statute of limitations, is not tolled during the pendency of an
> EEOC charge relating to the same discrimination claim.  Id. at 457, 467.  In
> reaching that result, the Court rejected the argument that tolling is necessary in
> order to achieve the goals of Title VII – which requires plaintiffs to engage in an
> "administrative conciliation process" by first filing their claims with the EEOC –
> finding "no policy reason that excuses . . . [a plaintiff's] failure to take the
> minimal steps necessary to preserve each . . . [of his] claim[s] independently."  Id.
> at 465-66.

622 F. Supp. 2d at 122-23.  The cases cited by Plaintiffs in support of tolling base their holdings

on notions of judicial efficiency, but neglect to address Johnson, "which rejected those

considerations in analogous circumstances."  Kolesnikow, 622 F. Supp. 2d at 123 (citing Brown

v. Bronx Cross Cnty. Med. Grp., 834 F. Supp. 105 (S.D.N.Y. 1993); Forbes v. Merrill Lynch,

Fenner, & Smith, Inc., 957 F. Supp. 450 (S.D.N.Y. 1997)).

Given the weight of authority within this district, the Court finds that Plaintiffs' state law

intentional infliction of emotional distress claims are dismissed as time-barred.

**V.     Conclusion**

For the foregoing reasons, Defendants motion for summary judgment is granted with

respect to Plaintiffs intentional infliction of emotional distress claims, and denied in all other

respects.


IT IS SO ORDERED.

Dated: New York, New York
       January //, 2012


                                                    _____
                                                    Robert P. Patterson, Jr.
                                                    U.S.D.J.

**Copies of this Order were sent by fax to:**

*Counsel for Plaintiffs:*
Aaron Sean Delaney
Paul, Weiss, Rifkind, Wharton & Garrison LLP (NY)
1285 Avenue of the Americas
New York, NY 10019
(212)-373-3000
Fax: (212)-492-0119
Email: adelaney@paulweiss.com

Desiree Cummings
Paul, Weiss, Rifkind, Wharton & Garrison LLP (NY)
1285 Avenue of the Americas
New York, NY 10019
(212)-373-3280
Fax: (212)-492-0280
Email: dcummings@paulweiss.com

Amber Nicole Hallett
Urban Justice Center
123 William St.
New York, NY 10038
(646)-459-3003
Fax: (212)-533-4598
Email: nhallett@urbanjustice.org

*Counsel for Defendants:*
Kerry M. Parker
Epstein, Becker & Green, P.C. (New York)
250 Park Ave.
New York, NY 10177
(973)-639-8259
Fax: (973)-639-8730