UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARTURO CARAVANTES, et al., <br><br> Plaintiffs, <br><br> v. <br><br> 53RD STREET PARTNERS, LLC, et al. <br><br> Defendants. | Civil No. 09-7821 (RPP) (JCF) <br> ECF Case <br><br> **DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Pursuant to the Court's Order entered on February 1, 2012 (ECF No. 69) Defendants hereby submit the following proposed Findings of Fact and Conclusions of Law:

## PROPOSED FINDINGS OF FACT

**A.  Defendants, 53rd Street Partners and Oscar Velandia**

1.  From April 11, 2005 through early June 2008, Remi Restaurant was managed by its General Manager, Francesco Pistorio.  In July 2008, Carlo Maggi replaced Pistorio as Remi's General Manger.

2.  As General Manager, Pistorio was in charge of managing the operations of Remi.  Pistorio directly managed the customer dining area of Remi (called the "Grand Canal"). Pistorio had the authority to hire, discipline and fire employees, and also personally prepared the weekly work schedules of employees who worked in the dining room.  No other Remi employee had managerial or supervisory authority over the employees who worked in the dining room and bar areas of Remi.

3.  During 2005 through 2008, Remi also offered private parties to its customers.  The private parties are held in the Rialto Room at Remi.  Rachel Lovaglio, during

this time, served as 53rd Street's party manager for that area. Lovaglio reported to Pistorio and was responsible for preparing the work schedules for employees who were assigned to the private parties at Remi.

    4.  Defendant, Oscar Velandia, has been employed at Remi since 1997. Velandia began his employment with Remi as a dishwasher and was subsequently promoted to busboy, food runner and then to server. In 2005, after becoming employed by 53rd Street, Velandia was appointed a head server at Remi.

    5.  In addition to Velandia, during the period from 2005 to 2008, 53rd Street employed other head servers at Remi, including Michele Tabossi, who served as head server for private parties, Alessandro Mancino, Stacy Crow, Gabrielle DiMeo and Alvise Marrangoni.

    6.  As a head server, Velandia had no supervisory or managerial responsibility at Remi. Velandia had no authority to make or recommend tangible employment actions, to direct employees' daily work activities, control employee work schedules or employment decisions, or to determine employees' rates or methods of pay. The additional responsibilities he had as a head server, over and above those of a server, were not supervisory or managerial in nature. Rather, any additional responsibilities were administrative, as Velandia was provided access to the restaurant software system for ordering and cancelling food and beverage orders.

    7.  As a head server, Velandia, as well as the other head servers, reported to the General Manager of Remi.

    8.  During the period from 2005 to 2008, Pistorio, as General Manager, conducted two daily meetings of staff for the purpose of discussing issues arising at Remi,

including service issues, specials of the day on the menus and other items in which he felt the staff should be aware.

9. Among the issues discussed by Pistorio at some of the daily meetings was the importance of employees showing respect for one another and that management forbade the intentional touching of employees by one another at the restaurant during work time.

10. Employees were made aware by Pistorio of the open door policy of 53rd Street with respect to communications and employees' reporting of issues or problems at the restaurant. Thus, for example, when an employee sought to take time off for vacations or sought a schedule change, the employee spoke personally to Pistorio to make that request and to seek permission to take time off.

11. Employees also were aware that they could report interpersonal or other workplace problems to Pistorio and that Pistorio was responsible for handling those issues.

12. 53rd Street maintained the required federal and state postings of various employment laws, including postings relating to sexual harassment issues. 53rd Street maintained those postings on a bulletin board located in a prominent location at Remi.

**B. Plaintiff, Arturo Caravantes**

13. During his employment with 53rd Street Partners, LLC ("53rd Street") from on or about April 11, 2005 through August 8, 2008, Plaintiff Arturo Caravantes served as a coffee station operator at Remi Restaurant.

14. In addition to his duties at the coffee station, Caravantes assisted the then general manager of Remi (Francesco Pistorio) with security and in the nightly closing of the restaurant.

15. Caravantes, during the relevant time period, worked Monday through Friday, beginning at 4:00 p.m. and ending with the closure and locking of Remi, the time of which varied from night to night.

16. At all times during his employment with 53rd Street, Caravantes reported to the general manager of Remi.

17. In or about February and March, 2008, Caravantes had private conversations with Pistorio in which he discussed his job at Remi and his career aspirations. During those conversations, Caravantes requested that he be promoted to a server position at Remi. Pistorio denied Caravantes' request to become a server because Caravantes had no experience in the positions of food runner and busboy and did not know the foods and wines served at Remi. At that time, Pistorio offered to provide Caravantes with six months of training at Remi or to arrange for Caravantes to receive three months of training at a nearby restaurant, Bistro Milano, which training would have enabled Caravantes to become a server.

18. Caravantes did not accept Pistorio's offers and consequently was not trained as a busboy, food runner or in any other position to prepare him to become a server at Remi.

19. During Caravantes, employment with 53rd Street, Pistorio had promoted several employees to other positions, including to server. In each such instance, the promoted employee served as a food runner and/or busboy.

20. In February and March 2010, Pistorio informed Caravantes that his position as a coffee station operator would be eliminated, as Remi would be purchasing new coffee making equipment to eliminate the need for an operator. Pistorio offered Caravantes

options to remain with 53rd Street after his position was eliminated, but Caravantes did not pursue any of the alternatives.

21. On or about March 10, 2008, Caravantes filed a charge of discrimination with the New York State Division of Human Rights alleging, among other things, that Pistorio had discriminated against him by refusing to promote Caravantes to a server position.

22. Caravantes and Oscar Velandia, a head server at Remi, commenced a voluntary and consensual sexual relationship in or about 2006. The commencement of the relationship was initiated by Caravantes.

23. During their relationship, Caravantes and Velandia engaged in sexual acts, including oral and anal sex, all of which occurred on the premises of Remi after the restaurant had closed for the day for business.

24. During his employment with 53rd Street, Caravantes at no time complained to 53rd Street or to any manager thereof about any conduct of Velandia. Velandia at no time complained to 53rd Street or to any manager thereof about any conduct of Caravantes.

25. In addition to the sexual relationship with Velandia, Caravantes voluntarily and consensually engaged in touching, comments, banter and gestures of a sexual nature with Velandia and other employees of 53rd Street. Such conduct occurred during the entire course of Caravantes' employment with 53rd Street.

26. During his employment with 53rd Street, Caravantes at no time ever complained to 53rd Street or any of its managers about any touching, comments, banter or gestures made by any employee of 53rd Street, with the exception that Caravantes complained of one single incident of touching by a then employee of Remi by the name of Ben Ranieri.

27. The alleged touching occurred in October, 2007, at which time Caravantes complained to Pistorio, the general manager of Remi, about the incident with Ranieri, claiming that Ranieri had inappropriately touched Caravantes on the penis during work hours.

28. Pistorio investigated the incident by obtaining the allegations from Caravantes and by speaking with Ranieri, who denied the allegations. Pistorio brought Caravantes and Ranieri together, discussed the issue with them, after which Caravantes and Ranieri shook hands and the incident concluded. There were no other incidents at Remi reported by either Caravantes or Ranieri with respect to the conduct of the other.

29. Caravantes failed to avail himself of 53rd Street's reasonable mechanisms for employees to express complaints of sexual harassment by Velandia in the workplace.

30. In late July and early August 2008, Caravantes discussed his employment with Maggi. At the time, Maggi confirmed to Caravantes that his position was being eliminated. Caravantes was the only remaining coffee station operation employed by 53rd Street at that time.

31. Maggi offered Caravantes two options to remain employed by 53rd Street – food runner or a full time cleaning position. Caravantes did not accept either option, and Maggi gave Caravantes a week off with pay to consider the alternatives offered.

32. Caravantes thereafter returned to Remi and reported to work at the coffee station. At that time, Maggi reiterated to Caravantes that his position had been eliminated but that he could take one of the jobs Maggi had offered. Caravantes rejected the offer and instead insisted that Maggi promote him to a waiter position. Maggi declined, at which point Caravantes' employment with 53rd Street ended on August 8, 2008.

## C. Plaintiff, Francisco Sotarriba

33. During his employment with 53rd Street Partners, LLC ("53rd Street") from on or about April 11, 2005 through May 31, 2008, Plaintiff Francisco Sotarriba served as a food runner at Remi Restaurant.

34. In May, 2008, Sotarriba met with Pistorio to request that he be allowed to take as vacation the months of June and July 2008. Pistorio denied Sotarriba's request for two months off but told Sotarriba that he could have one month off from work.

35. Sotarriba's last day of work before commencing his vacation was on May 31, 2008, but he did not report back to Remi for work until sometime in September, 2008. 53rd Street did re-hire Sotarriba following his unexcused absence of more than two months.

36. At all times during his employment with 53rd Street, Sotarriba reported to Pistorio, the general manager of Remi.

37. Sotarriba consensually and voluntarily engaged in touching, comments, banter and gestures of a sexual nature with Velandia and other employees of 53rd Street. Such conduct occurred during the entire course of Sotarriba's employment with 53rd Street.

38. During his employment with 53rd Street, Sotarriba at no time complained to 53rd Street or to any manager thereof about any conduct of Velandia. Velandia at no time complained to 53rd Street or to any manager thereof about any conduct of Sotarriba.

39. Sotarriba failed to avail himself of 53rd Street's reasonable mechanisms for employees to express complaints of sexual harassment by Velandia in the workplace.

**PROPOSED CONCLUSIONS OF LAW**

1. Title VII of the Civil Rights Act of 1964, as amended, requires an aggrieved employee to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discriminatory action.  42 *U.S.C.* § 2000e-5(e)(1)); *Petrosino v. Bell Atlantic*, 385 F. 3d 210, 219-20 (2d Cir. 2004).  A plaintiff who fails to timely file an EEOC is barred from bringing that claim in court.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-10 (2002).

2. The March 2008 NYSDHR Complaint contains no allegations of a continuing violation of the law and is legally insufficient to include claims of sexual harassment against Velandia and any other employees of 53rd Street. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-10 (2002); *Cooper v. Wyeth Ayest Lederle*, 106 F. Sipp 2d 479, 490 (S.D.N.Y. 2000); *Beattie v. Farnsworth Middle Sch.*, 143 F. Supp. 2d 220, 227 (N.D.N.Y. 1998); *Morris v. Conagra Foods, Inc.*, 435 F. Supp 2d 887, 903 (N.D. Iowa 2005);

3. Caravantes' Amended Complaint filed with the NYSDHR in June 2009 does not relate back to his March 2008 initial NYSDHR Complaint. FRCP 15(c). *Fitzgerald v. Henderson*, 251 F.3d 345, 359-360 (2d Cir. 2001); *Butts v. City of New York Department of Housing Preservation & Development*, 990 F.2d 1397, 1402 (2d Cir. 1993).

4. Caravantes' claims against 53rd Street and Velandia set forth in Caravantes' June, 2009 Amended NYSDHR Complaint are time barred. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-10 (2002).

5. All claims of sexual harassment by Caravantes that are based upon claims of conduct by 53rd Street employees are time barred, and all claims that are predicated on events occurring before May 15, 2007 (300 days prior to the filing of the March, 2008 initial NYSDHR

Complaint are time barred. *Petrosino v. Bell Atlantic*, 385 F. 3d 210, 219-20 (2d Cir. 2004); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-10 (2002).

## HOSTILE ENVIRONMENT CAUSE OF ACTION

6. Courts review discrimination claims brought under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") according to the same standards that apply to Title VII discrimination claims. *Pucino v. Verizon Wireless Commc'ns*, 618 F.3d 112 (2d Cir. 2010); *Mack v. Otis Elevator Co.*, 326 F.3d 116 (2d Cir. 2003); *VanZant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996).

7. To prevail on a claim of sexual harassment based on a hostile work environment under Title VII, the NYSHRL and the NYCHRL, a plaintiff must establish two elements: "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer."' *Petrosino v. Bell Atl.*, 385 F.3d 210, 221 (2d Cir. 2004) (quoting *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003), cert. denied, 540 U.S. 1016 (2003) (quoting *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 436 (2d Cir. 1999)). Satisfying this standard entails "showing both `objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment,' and the [plaintiff] must also subjectively perceive that environment to be abusive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) "As a general rule, incidents must be more than `episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano, 294 F.3d at 374* (quoting

Perry, 115 F.3d at 149). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Id,*; see *Petrosino v. Bell Atlantic*, 385 F.3d 210, 224 (2d Cir. 2004) ("isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment").

    8.  Furthermore, under Title VII, the NYSHRL and the NYCHRL, consensual sexual relationships, and sexual conduct between and among employees that is not unwelcomed, does not form the basis of a claim of sexual harassment in violation of such laws. *DeCinito v. Westchester County Medical Center*, 807 F.2d 304 (2d Cir. 1986); *Bush v. Raymond Corp.*, 954 F. Supp. 490, 498 (N.D.N.Y. 1997); *Mauro v. Orville*, 259 A.D.2d 89, 697 N.Y.S.2d 704 (3rd Dep't 1999).

    9.  Because Caravantes engaged in a voluntary and consensual sexual relationship with Velandia, he has failed to prove the elements of a hostile work environment sexual harassment claim under Title VII, the NYSHRL and the NYCHRL. *Id.*

    10.  Because Sotarriba engaged in a voluntary and consensual sexual relationship with Velandia, he has failed to prove the elements of a hostile work environment sexual harassment claim under Title VII, the NYSHRL and the NYCHRL. *Id.*

**<u>VICARIOUS LIABILITY UNDER TITLE VII</u>**

    11.  Pursuant to Title VII, an employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. *Burlington Industries, Inc. v. Ellerth* , 542 U.S. 742 (1998).

12. For purposes of Title VII, "an individual qualifies as an employee's 'supervisor' if: (a) the individual has authority to undertake or recommend tangible employment decisions affecting the employee; or (b) the individual has authority to direct the employee's daily work activities." *Mack v. Otis Elevator Co.,* 326 F.3d 116, 127 (2d Cir. 2003).

13. A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits*." Mack,* 326 F.3d at 124 *(citing Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)).

14. During all relevant times here, Velandia was not a supervisor and, accordingly, plaintiffs' claim for vicarious liability against 53rd Street fails. *Mack, supra* at 127.

15. Furthermore, pursuant to the *Faragher* and *Ellerth* decisions, an employer is not liable under Title VII for sexual harassment committed by a supervisory employee if it sustains the burden of proving that (1) no tangible employment action "such as discharge, demotion, or undesirable reassignment" was taken as part of the alleged harassment, (2) "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (3) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Industries, Inc. v. Ellerth ,* 542 U.S. 742 , 765 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998).

16. Neither Caravantes nor Sotarriba sustained a tangible employment action as part of the alleged sexual harassment. *Id*.

17.     The maintenance of a anti-sexual harassment policy, "[a]lthough not necessarily dispositive, . . . is an important consideration in determining whether the employer " has taken reasonable care". *Mack v. Otis Elevator Co.*, 326 F.3d 116, 128 (2d Cir. 2003) (quoting *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 295 (2d Cir. 1999), *cert. denied*, 529 U.S. 1107, 120 S. Ct. 1959, 146 L. Ed. 2d 791 (2000).

18.     The "reasonable care" prong of *Faragher-Ellerth* is satisfied by the establishment of "an anti-harassment policy and an accompanying complaint procedure." *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245 (2d Cir. 2001).

19.     During plaintiff's employment with 53rd Street, 53rd Street maintained an effective policy and practice prohibiting sexual harassment in the workplace. *Id*.

20.     53rd Street, through its postings and practices, provided a reasonable and effective mechanism for employees to raise complaints of workplace harassment. *Id.*

21.     Because 53rd Street exercised reasonable care to prevent and correct promptly any sexual harassing behavior, and because plaintiffs unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise, plaintiffs' vicarious liability claim fails. *Id.*, *Burlington Industries, Inc. v. Ellerth* , 542 U.S. 742 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998).

**VICARIOUS LIABILITY UNDER NYSHRL**

22.     It has long been held, by both federal courts within the Second Circuit and by New York state courts, that employer liability under the NYHRL requires a more stringent showing than under Title VII.  Pursuant to NYSHRL, an employer cannot be liable for the discriminatory conduct of one of its employees unless the employer became a party to the

discriminatory conduct by encouraging, condoning or accepting the discriminatory conduct complained of by the plaintiff. *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 311 (2d Cir. 2004) *State Div. of Human Rights v. St. Elizabeth's Hosp.*, 66 N.Y.2d 684, 687 (1985)); *Totem Taxi, Inc. v. New York State Human Rights Appeal Bd.*, 65 N.Y.2d 300, 304 (1985). Condonation of the type required to hold an employer liable requires a knowing, after-the-fact forgiveness or acceptance of an offense and is disproved by showing that the employer reasonably investigated a complaint of discriminatory conduct and took any necessary corrective action. *Father Belle Cmty. Ctr. v. New York State Div. of Human Rights*, 221 A.D.2d 44, 53 (4th Dep't 1996); *St. Elizabeth's Hosp.*, 66 N.Y.2d at 687 (1985).

23. Because 53rd Street had no actual or constructive knowledge of the sexual harassment claims asserted by Caravantes and Sotarriba during their respective employment with 53rd Street, Plaintiffs have failed to prove that 53rd Street encouraged, condoned or accepted the discriminatory conduct complained of by plaintiffs. *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 311 (2d Cir. 2004) *State Div. of Human Rights v. St. Elizabeth's Hosp.*, 66 N.Y.2d 684, 687 (1985)); *Totem Taxi, Inc. v. New York State Human Rights Appeal Bd.*, 65 N.Y.2d 300, 304 (1985).

**VICARIOUS LIABILITY UNDER NYCHRL**

24. Pursuant to NYCHRL, an employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent where: (a) the employee or agent exercised managerial or supervisory responsibility; or (b) the employer knew of the employee's or agent's discriminatory conduct and acquiesced in such conduct or failed to take immediate and appropriate corrective action; … or (c) the employer should have known of the

employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct. N.Y.C. Admin. Code § 8-107(13)(b).

25. Because claims brought under NYSHRL and NYCHRL are analyzed under the same standard as Title VII claims, an individual qualifies as an employee's 'supervisor' if: (a) the individual has authority to undertake or recommend tangible employment decisions affecting the employee; or (b) the individual has authority to direct the employee's daily work activities." *Mack v. Otis Elevator Co.,* 326 F.3d 116, 127 (2d Cir. 2003). A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits*." Mack,* 326 F.3d at 124 *(citing Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)).

26. Between April 2005 and August 2008, Velandia was not a managerial or supervisory employee pursuant to the NYCHRL. Accordingly, 53rd Street cannot be held vicariously liable for his conduct. *Mack v. Otis Elevator Co.*, 326 F.3d 116, 126 (2d Cir. 2003).

27. 53rd Street had no actual or constructive knowledge of the sexual harassment claims asserted by Caravantes and Sotarriba during their respective employment with 53rd Street. *Murruy v. New York Univ. College of Dentistry*, 57 F.3d 243 (2d Cir. 1995).

28. Therefore, because Velandia was not a supervisory or managerial employee, and because 53rd Street had no actual or constructive knowledge of harassing conduct by Velandia against Caravantes or Sotarriba, plaintiffs' claim for vicarious liability against 53rd Street fails under the NYCHRL. *Id.* ; *Mack v. Otis Elevator Co.*, 326 F.3d 116, 126 (2d Cir. 2003).

**INDIVIDUAL LIABILITY UNDER NYSHRL and NYCHRL**

29. It is well known that individuals are not subject to liability under Title VII. *Kercado-Clymer v. City of Amsterdam,* 370 Fed. Appx. 238 (2d Cir. 2010); *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003). There are two bases for holding an individual liable under both the NYSHRL and the NYCHRL- as an "employer" or as an "aider and abetter." N.Y. Exec. Law § 296(1),(6); N.Y.C. Admin. Code § 8-107(1)(a), 8-107(6).

30. An employee is not individually subject to liability under Section 296(1) of the NYSHRL, and not considered an "employer" even "though he has a title as an officer and is the manager or supervisor of a corporate division . . . if he is not shown to have: (1) any ownership interest; or (2) any power to do more than carry out personnel decisions made by others." *Patrowich v. Chem. Bank*, 63 N.Y.2d 541,542 (1984). "The factors a court may consider under the second prong set forth in *Patrowich* include whether the individual (l) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or employment conditions; (3) determined the rate and methods of payment; and (4) maintained employment records."' *Maher v. Alliance Mortg. Banking Corp.*, 650 F. Supp. 2d 249, 260 (E.D.N.Y. 2009) (quoting *Pícinich v. United Parcel Serv.,*321 F. Supp. 2d 485, 517 (N.D.N.Y. 2004). The same, or similar factors have been applied to claims against individual defendants under the NYCHRL. *Ballard v. Children's Aid Soc'y.,*781F. Supp.2d 198, 211 (S.D.N-Y. 2011); *Mita v. State Bank of India*, No.03Civ.6331, 2005 WL 2143144, at *3 (S.D.N.Y. Sept.6,2005); *Priore v. Nevt York Yankees*,307 A.D.2d67,74 (N.Y. App. Div. 2003).

31. Between April, 2005 and August 2008, Velandia was not an "employer" pursuant to the NYSHRL or the NYCHRL, and therefore cannot be held personally liable under each statute. *Patrowich v. Chem. Bank*, 63 N.Y.2d 541, 542 (1984).

32. The NYSHRL and NYCHRL provide that it is an unlawful discriminatory practice "for any person to aid, abet, incite, compel, or coerce" acts prohibited by those laws. N.Y. Exec. Law § 296(6) and N.Y.C. Admin. Code § 8-107(6).

33. Under the circumstances of this case, Velandia cannot be held individually liable as an aider and abettor. Aiding and abetting liability is a viable theory only where an underlying violation of the law has taken place. *Falchenberg v. N.Y. State Dep't of Educ.,* 338 F. Appx. 11, 14 (2d Cir. 2009). Therefore, since plaintiffs' claims of a hostile work environment under the NYSHRL and NYCHRL are without merit, Velandia cannot be deemed to be an aider and abettor under these statutes.

34. Furthermore, Plaintiffs' claims are solely based on the alleged conduct of Velandia.[1] However, the perpetrator of sexually harassing conduct cannot be held liable under the NYSHRL or the NYCHRL as an aider and abettor. *Goldin v. Eng'rs Country Club*, 864 N.Y.S.2d 43, 46 (App. Div. 2nd Dep't 2008); *Ranieri v. McCarey*, 712 F. Supp. 2d 271, 282 (S.D.N.Y. 2010) ("An individual cannot aid and abet his own alleged discriminatory conduct."); *Virola v. XO Commc'ns,Izc.*, No. 05 Civ. 5056, 2008 WL 176660L, at *20 E.D.N.Y. Apr. 15, 2008) ("An individual may not be held liable for aiding and abetting his own discriminatory conduct but only for assisting another party in violating the NYHRL); *Chamblee v. Harris & Harris, Inc.*, 154 F. Supp. 2d 670, 677 (S-D.N.Y. 2001) ("[P]rimary actor cannot be aider and abettor of his own actions.)

35. Therefore, since plaintiffs' claims are based solely on the alleged conduct of Velandia, he cannot be deemed to have aided and abetting himself. *Id*.

---

[1] Companies are legal fictions that can operate only through their designated agents and employees. *People v. Byrne*, 77 NY2d 460, 465 [1991]). Therefore, 53rd Street cannot be considered a perpetrator under these circumstances since it can only act through its agents and employees.

**DAMAGES**

36.     To recover emotional distress damages under Title VII, plaintiff must show "that [he] suffered an actually injury caused by the deprivation." *Patrolmen's Benevolent Ass'n. of the City of N.Y, Inc. v. City of new York*, 310 F.3d 43, 55 (2d Cir. 2002).  "A plaintiff's subjective testimony, standing alone, is generally insufficient to sustain an award of emotional distress damages. Id.  Rather, it must be substantiated by competent evidence "that such an injury occurred, such as the testimony of witnesses to the plaintiff's distress, . . . or the objective circumstances of the violation itself." *Id.*  New York Human Rights Law permits recovery of emotional distress damages where it is "proved by the complainant's own testimony, [and] corroborated by reference to the circumstances of the alleged misconduct." *Matter of New York City Tr. Auth. v State Div. of Human Rights*, 78 N.Y.2d 207, 216 (1991); *Beame v. DeLeon*, 622 N.Y.S.2d 639, 645 (N.Y. Sup. Ct. 1993).

37.     To recover damages for physical injuries where the "the medical effect on the human system of the infliction of injuries is [] not within the sphere of the common knowledge of the lay person," *Barnes v. Anderson*, 202 F.3d 150, 159 (2d Cir. 1999), "expert evidence is often required." *Id.* (quotations omitted).

38.     Where such expert testimony is offered, Federal Rule of Evidence 702 requires that the expert be qualified by "knowledge skill, experience, training, or education" on a subject matter that is supposed to "assist the trier of fact to understand the evidence or to determine a fact in issue." *Fed. R. Evid.* 702.  That means that the expert must testify "on issues or subject matter that are within his area of expertise." *Arista Records LLC v. Zomba Recording LLC*, 608 F. Supp. 2d 409, 422 (S.D.N.Y. 2009).

39. The expert testimony must also "rest[] on a reliable foundation." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). It must be (a) "based on sufficient facts or data"; (b) be "the product of reliable principles and methods"; and (c) "the expert has [to] reliably appl[y] the principles and methods to the facts of the case." *Fed. R. Evid.* 702.

40. To be based on reliable methods, the expert opinion "requires some explanation as to how the expert came to [her] conclusion and what methodologies or evidence substantiate that conclusion." *Riegel v. Meditronic, Inc.*, 415 F.3d 104, 127 (2d Cir. 2006). Also, when opining on causation, the expert must engage in a differential analysis, i.e., "the expert testimony must at least address obvious alternative causes and provide a reasonable explanation for dismissing specific alternate factors identified by the defendants." *Derienzo v. Metropolitan Transportation Authority*, 694 F. Supp. 2d 229, 236 (S.D.N.Y 2010) (quotations omitted). "[A] differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation. *Id.*

41. Expert testimony is permitted only where the proffering party provides its adversary with a written report prepared by the witness, setting for "a complete statement of all opinions to be expressed and the basis and reason therefor." *Fed. R. Civ. Pro.* 26(e)(1). Where a party "without substantial justification fails to disclose information required by Rule 26(e) or 26(e)(1), [it] shall not, unless such failure is harmless, be permitted to use [it] at a trial." *Fed. R. Civ. Pro.* 37(c)(1). Rule 37(c)(1) also embraces situations where the "[e]xpert testimony exceed[s] the bounds of the expert's report." *In re Kreta Shipping, S.A.*, 181 F.R.D. 273, 275 (S.D.N.Y. 1998).

42. Where the plaintiff relies on medical records to establish causation, the records must be self-explanatory, or the plaintiff must support them with expert testimony.

Where the "medical records are not self-explanatory[, they] require explanation to a jury" by way of expert testimony. *Solomon v. Nassau County*, 274 F.R.D. 455, 461 (E.D.N.Y. 2011). "Where evidence of causation is not plain from the medical records, an expert opinion is needed to establish causation." *Piscopo v. Sec'y of HHS*, 66 Fed. Cl. 49, 56 (Fed. Cl. 2005). Without the testimony of the treating physicians, the content of the records contains inadmissible hearsay, which warrants their exclusion as well. *See Motta v. First Unum Life Ins. Co.*, 86 Fed. R. Evid. Serv. (Callaghan) 778 (E.D.N.Y. 2011).

43. Here, Plaintiff Caravantes' expert witness, Jessica Pearson, Psy.D., submitted no expert report and no opinion with respect to the cause of Caravantes' alleged physical injuries, and in any event, is not qualified to render such an opinion. To establish causation here, Caravantes must present expert testimony, which he has failed to provide. Based upon the authority cited in paragraphs 37 through 42 above, Caravantes' claims for damages based on any and all alleged physical injuries fail as a matter of law.

44. To recover punitive damages under Title VII and the NYCHRL,[2] plaintiff must show that "the employer has engaged in intentional discrimination" with either "conscious knowledge it was violating the law" or while engaging in "egregious or outrageous acts" from which an inference of malice or reckless indifference to its knowledge that it may be acting in violation of federal law may be inferred. *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 529-30, 535 (1999) (*quoting* 42 U.S.C. § 1981a(b)(1)).

45. A plaintiff may recover punitive damages against an employer where the employer is found vicariously liable. Id. at 542. The employer may avoid liability for punitive

---

[2] Title VII and the NYCHRL impose the same burden of proof on a plaintiff seeking punitive damages. *Farias v. Robinson*, 259 F.3d 91, 101 (2d Cir. 2001). The NYSHRL does not allow plaintiff to recover punitive damages. *Id.*

damage by showing that it had an antidiscrimination policy and made a good faith effort to enforce it. *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556 (2d Cir. 2011).

          Respectfully submitted,
          EPSTEIN BECKER & GREEN, P.C.

      By: s/Kerry M. Parker
          Kerry M. Parker
          kparker@ebglaw.com
          250 Park Avenue
          New York, New York  10177-0077
          Tel:  (973) 639-8259
          Fax:  (973) 639-8730
          Attorneys for Defendants

Dated:  March 19, 2012